■ In the Matter of DIETER HACH, Petitioner, v ZONING BOARD OF APPEALS OF TOWN OF EAST HAMPTON, Respondent. [731 NYS2d 219] —Proceeding pursuant to CPLR article 78 to review a determination of the respondent Zoning Board of Appeals of the Town of East Hampton, dated November 10, 1998, which, after a hearing, denied the petitioner's application for a natural resources special permit for the construction of a 247-foot rock revetment.

Adjudged that the petition is granted, on the law, without costs or disbursements, to the extent that the determination is annulled and the matter is remitted to the respondent for further proceedings consistent herewith.

The petitioner is the owner of a beachfront home in East Hampton. To offset the effects of both natural coastal erosion and the alleged impacts of government dredging, and to generally protect his home from storm surge damage, the petitioner sought a natural resources special permit from the respondent Zoning Board of Appeals of the Town of East Hampton (hereinafter the ZBA) to construct a rock revetment measuring 247 feet in length, 42 feet in width, and 14 feet in height parallel to the waterline on his land. In essence this is a man-made jetty-like formation of quarry stones of up to 300 to 500 pounds on the beach inland of and parallel to the shoreline. The stone "infrastructure" will be covered with 890 cubic yards of sand and beach grasses to augment an existing bluff. This revetment will thus resemble a natural dune, and there are other similar structures on neighboring parcels in the area. The petitioner has expended approximately $40,000 in years past on so-called "soft solutions" which consisted of additions of sand alone, but these proved to be insufficient to provide relief as they were washed out by storms. The petitioner, with corroborative expert evidence, is thus of the opinion that a revetment, a more permanent "hard solution," is essential to prevent his home from being destroyed.

The ZBA, by a three to two vote, denied the application after extensive SEQRA review (*see*, ECL art 8) and public hearings. The majority of the ZBA did not refute the evidence that the revetment would likely achieve its purpose with a minimum of environmental harm if it remained covered by sand. However, the majority expressed concern, *inter alia,* that if the sand was not maintained and the underlying stones became exposed to tidal action, this would exacerbate erosion problems on adjacent lands which include a public park and beach. Rather

than grant the application subject to reasonable conditions ensuring that the revetment remain covered with sand, the ZBA denied the application, *inter alia,* for a perceived lack of an enforceable mechanism to ensure the maintenance of sand. This determination was arbitrary and capricious and unsupported by substantial evidence. Rather, upon our review of the record, we find that there is substantial evidence to support the view of the two dissenting members at the ZBA.

Pursuant to East Hampton Town Code former § 153-5-50 (6), now § 255-5-50 (6), in order to obtain a natural resources special permit, the petitioner was required to demonstrate, among other things, that his property was in imminent danger absent a coastal erosion structure, that soft solutions would not suffice, and that the proposed structure is the minimum necessary to control erosion. The petitioner has clearly met this burden. Indeed, the majority of the ZBA denied the application finding imminent peril to be "debatable" and soft solutions to be worth trying again. However, the ZBA approved revetments for neighboring properties, signalling a clear recognition of imminent peril. Furthermore, the petitioner has already spent $40,000 on unsuccessful soft solutions and under the circumstances of this case there is no rational basis for requiring him to spend more money on a proven ineffective solution. There is also no evidence to support the majority's conclusion, implicitly contradicting its acceptance of the petitioner's final EIS, that a smaller revetment might suffice with reduced erosion risks to neighboring properties.

The record strongly supports the conclusion of the ZBA dissenters that this application received extensive environmental review. After the initial public hearing, the petitioner completed an Environmental Impact Statement (hereinafter EIS) designed to provide specific information on the complex hydrodynamics of the site, explore alternative to the proposed construction, and mitigate any adverse impacts. The EIS was deemed complete and a public hearing was held. General objections to hardened coastal structures were raised but none that specifically stated how the design and placement of the revetment would adversely affect the environment. Indeed, the proposed revetment is designed to minimize the angle of wave attack by providing a slope consisting with natural beaches in the area. The gradual slope reduces wave deflection and therefore reduces beach scouring and lateral energy transport to neighboring properties as compared to more vertical structures. The Accabonac Protection Committee, a well-established environmental advocacy organization which opposes coastal structures in general, supports the petitioner's proposal.

The evidence in the record further demonstrates that the feared erosion on adjacent properties will be minimized by the maintenance of the revetment with sand and beach grasses. Under normal conditions, the entire structure will remain buried and undetectable. The proposed revetment will be situated entirely out of the tidal zone and will not interfere with normal littoral currents or marine life. The structure as proposed resembles a natural dune and could even serve as a nesting area for shore birds. It is only in a major storm event that this structure will serve its intended purpose, namely, to protect the property which supports the house from sudden erosion. Unfortunately the house is located on a small lot so it cannot be moved upland.

The petitioner possesses both the will and the financial wherewithal to guarantee that the revetment will be appropriately maintained. He has offered to post a bond and there was discussion as to the establishment of a covenant running with the land to secure future compliance. While the choice of enforcement mechanism is a matter we leave to the full ZBA for its determination, it is apparent that the petitioner has demonstrated his entitlement to the requested natural resources special permit, subject to reasonable conditions ensuring the maintenance of the revetment.

Accordingly, we remit this matter to the respondent ZBA for further proceedings in accordance herewith. Among other things, the ZBA should fix criteria to determine the conditions under which sand must be added to the revetment to replenish the covering; i.e., what degree of exposure of the underlying rocks must exist to trigger the requirement that the petitioner add sand. Additionally, the ZBA must determine how best to ensure that the petitioner and his grantees and assigns remain legally obligated to comply with the condition of the permit, so as to assure that the revetment remains covered with appropriate amounts of sand for so long as it shall be in existence. Ritter, J. P., S. Miller, Luciano and Smith, JJ., concur.